**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| DAVID GRODNICK, individually and on behalf of all others similarly situated,<br>Plaintiff,<br>v.<br>JOHNSON & JOHNSON CONSUMER, INC., KENVUE, INC.,<br>Defendants. | Case No. 3:24-cv-2616-MAS-JBD<br><br>Civil Action |

**DEFENDANTS JOHNSON AND JOHNSON CONSUMER INC. AND KENVUE INC.'S REPLY BRIEF IN FURTHER SUPPORT OF MOTION TO DISMISS CLASS ACTION COMPLAINT**

Stephen Matthews
**DLA PIPER LLP (US)**
51 John F. Kennedy Parkway, Suite 120
Short Hills, New Jersey 07078
Tel.: (973) 520-2541
stephen.matthews@us.dlapiper.com

Angela C. Agrusa *(pro hac vice)*
Shannon E. Dudic (*pro hac vice*)
**DLA PIPER LLP (US)**
2000 Avenue of the Stars
Suite 400 North Tower
Los Angeles, California 90067-4735
Tel: (310) 595-3000
angela.agrusa@us.dlapiper.com
shannon.dudic@us.dlapiper.com

*Attorneys for Defendants Johnson and Johnson Consumer Inc. and Kenvue Inc.*

# TABLE OF CONTENTS

**Page**


I. PRELIMINARY STATEMENT ..... 1

II. ARGUMENT ..... 3

A. Plaintiff's Claims Are Preempted by the Monograph ..... 3

1. Plaintiff Seeks to Impose Requirements Not in the Monograph ..... 3

2. The FDA's Guidance Regarding Residual Solvents Is Non-Binding and Not Applicable ..... 5

B. Plaintiff Lacks Standing ..... 7

C. Plaintiff's Fraud Claims Fail to Plead Any Actionable Misrepresentation or Omission ..... 10

D. Plaintiff Fails to Plead Cognizable Breach of Warranty Claims ..... 13

E. Plaintiff's Negligence Claim Is Barred by the Economic Loss Doctrine ..... 14

F. Plaintiff's Unjust Enrichment Claim Is Duplicative and Should be Dismissed ..... 15

III. CONCLUSION ..... 15

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Bell v. Dave*,
2022 WL 2667017 (D.N.J. Jul. 11, 2022) ....................9

*Bowling v. Johnson & Johnson*,
65 F. Supp. 3d 371 (S.D.N.Y. 2014) ....................4

*Carter v. Novartis Consumer Health, Inc.*,
582 F. Supp. 2d 1271 (C.D. Cal. 2008) ....................4

*Crozier v. Johnson & Johnson Consumer Cos.*,
901 F. Supp. 2d 494 (D.N.J. 2012) ....................5

*Gibriano v. Eisai, Inc.*,
2024 WL 1831546 (D.N.J. Mar. 30, 2024) ....................8

*Goldemberg v. J& J Consumer Cos., Inc.*,
8 F. Supp. 3d 467 (S.D.N.Y. 2014) ....................5

*Greisberg v. Boston Sci. Corp.*,
2020 WL 4435409 (D.N.J. Aug. 3, 2020) ....................14

*Harris v. Pfizer, Inc.*,
586 F. Supp. 3d 231 (S.D.N.Y. 2022) ....................15

*Hoffman v. Nutraceutical Corp.*,
2013 WL 2650611 (D.N.J. June 10, 2013) ....................12, 13

*In re Johnson & Johnson Talcum Powder Prods. Litig.*,
903 F.3d 278 (3d Cir. 2018) ....................8, 13

*In re Metformin Mktg. & Sales Pracs. Litig.*,
2022 WL 970281 (D.N.J. Mar. 30, 2022) ....................8

*In re Valsartan, Losartan & Irbesartan Prods. Liab. Litig.*,
2021 WL 222776, at *9-12 (D.N.J. Jan. 22, 2021) ....................13, 15

*Koronthaly v. L'Oreal USA, Inc.*,
374 F. App'x 257 (3d Cir. 2010) ....................10

*Kuzian v. Electrolux Home Prods.*,
937 F. Supp. 2d 599 (D.N.J. 2013) .......... 14

*Levy v. Hu Prods. LLC*,
2024 WL 897495 (S.D.N.Y. Mar 1, 2024) .......... 9

*Lightning Lube, Inc. v. Witco Corp.*,
4 F.3d 1153 (3d Cir. 1993) .......... 11

*Metcalfe v. Biomet, Inc.*,
2019 WL 192902 (D.N.J. Jan. 15, 2019) .......... 14

*Ortiz v. Goya Foods, Inc.*,
2020 WL 1650577 (D.N.J. Apr. 3, 2020) .......... 15

*Schechter v. Hyundai Motor Am.*,
2019 WL 3416902 (D.N.J. Jul. 29, 2019) .......... 14

*Slowinski v. BlueTriton Brands, Inc.*,
2024 U.S. Dist. LEXIS 141909 (N.D. Ill. Aug. 9, 2024) .......... 4, 12

*Truss v. Bayer Healthcare Pharms. Inc.*,
2022 WL 16951538 (S.D.N.Y. Nov. 15, 2022) .......... 5

*Tyman v. Pfizer, Inc.*,
2017 WL 6988936 (S.D.N.Y. Dec. 27, 2017) .......... 14

**Statutes and Regulations**

21 U.S.C. §§ 379r, *et seq.* .......... 4

21 C.F.R. §§ 358.701, *et seq.* .......... *passim*

21 C.F.R. § 358.750(c)(2)(ii) .......... 3

51 Fed. Reg. 27,346 (Jul. 30, 1986) .......... 3, 4

56 Fed. Reg. 63,554 (Dec. 4, 1991) .......... 4

Defendants Johnson & Johnson Consumer Inc. ("JJCI") and Kenvue Inc. ("Kenvue" and, collectively, "Defendants") file this reply brief in further support of their motion to dismiss Plaintiff David Grodnick's ("Plaintiff") Complaint (ECF 1, "Compl.")

## I. PRELIMINARY STATEMENT

Plaintiff's claims are entirely constructed upon the fact that benzene is a chemical compound naturally found in coal tar. From this fact of nature, Plaintiff makes a series of inferential leaps, equating its presence with "dangerously high" levels indicating a manufacturing defect. These conclusions are unsupported by Plaintiff's scant allegations regarding supposed "testing" and are rebutted by the authorities cited in the Complaint itself.

**First**, Plaintiff's claims are preempted because they seek to impose additional labeling requirements beyond those mandated by applicable federal law. In promulgating the Monograph for OTC coal tar products, the FDA specifically rejected the inclusion of warnings like the one Plaintiff now seeks to impose. It did so with full knowledge of the presence and effects of benzene in products like the Therapeutic Shampoos.[1] The FDA's non-binding guidance concerning the

[1] Neutrogena T/Gel® Therapeutic Shampoo –Original Formula and Neutrogena T/Gel® Therapeutic Shampoo –Extra Strength (the "Therapeutic Shampoos").

manufacturing of entirely different products does not supplant the Monograph nor warrant the inclusion of additional warnings considered and rejected by the FDA.

**Second**, Plaintiff cannot establish Article III standing. Plaintiff's alleged injury is entirely dependent upon ”dangerous levels” of benzene in the Therapeutic Shampoos – some of which he did not even purchase. However, other than scant allegations regarding supposed "testing," Plaintiff's Complaint fails to establish the presence of naturally occurring trace amounts of benzene in the Therapeutic Shampoos are actually "dangerously high" or that they pose an immediate risk to consumers. In fact, Plaintiff's unsupported conclusions are entirely rebutted by the authorities cited in the Complaint itself, opining on *acceptable levels* of benzene in over-the-counter drug products.

**Third**, the prominent disclosures of coal tar, coupled with a coal tar carcinogen warning, dispels Plaintiff's feigned ignorance regarding the presence of benzene and precludes his fraud claims. Taken to their logical conclusion, Plaintiff's claims would require manufacturers to inform consumers of any risk of any potential presence of any one of thousands of compounds in their products, even when such trace amounts are generally regarded as safe and acceptable. These flaws mandate dismissal of Plaintiff's derivative claims for breach of warranty, negligence, and unjust enrichment.

For these and the additional reasons discussed below, the Complaint should be dismissed in its entirety, with prejudice.

## II. ARGUMENT

### A. Plaintiff's Claims Are Preempted by the Monograph

Plaintiff's sole basis for avoiding preemption is that the FDA's non-binding guidance regarding residual solvents governs his demands for additional warnings on the Therapeutic Shampoos' labels, rather than the FDA's monograph governing OTC coal tar shampoos. 21 C.F.R. § 358.701, *et seq.* (the "Monograph"). Unlike the FDA's recommendations, which pertain to an entirely distinct class of drugs, the Monograph specifically enumerates the required disclosures for coal tar products containing benzene and thus preempts Plaintiff's claims.

#### 1. Plaintiff Seeks to Impose Requirements Not in the Monograph

Plaintiff's assertion that Defendants should have warned of the potential risk of benzene in coal tar was considered, and rejected, by the FDA. In the Monograph, the FDA approved a warning label that it deemed sufficient to apprise consumers of the potential harmful health effects posed by coal tar treatment of certain scalp conditions. *See* 21 C.F.R. § 358.750(c)(2)(ii). It did so with full knowledge that coal tar contains benzene and its potential adverse health effects. *See* 51 Fed. Reg. 27,346; 27,348 (Jul. 30, 1986) ("it is well-established that coal tar contains substances [like benzene] that possess carcinogenic properties."). Moreover, the FDA specifically rejected the premise that OTC coal tar products should include additional, more

specific warnings like the one Plaintiff now seeks to impose. *See* 56 Fed. Reg. 63,554 (Dec. 5, 1991) (rejecting comment that the warning is "too vague" stating that FDA "believes that the warnings, as stated, adequately alert the consumer of the precautions necessary when using these products."). Accordingly, the FDA's requirement that coal tar products make certain disclosures and warnings (*e.g.* "do not use for prolonged periods") but not others (i.e. "contains benzene") expressly contradicts the very requirements Plaintiff now seeks to impose. *See* 51 Fed. Reg. 27,349; *see also* 56 Fed. Reg. 63,554, 63,565; *Bowling v. Johnson & Johnson*, 65 F. Supp. 3d 371 (S.D.N.Y. 2014) ("the FDA has issued a monograph directly on point but declined … to indicate … that 'Restores Enamel' is misleading. If successful, this litigation would do exactly what Congress, in passing section 379r of the FDCA, sought to forbid: using state law causes of action to bootstrap labeling requirements that are 'not identical with' federal regulation."). As an additional and different requirement from applicable federal law, Plaintiff's claims are expressly preempted. 21 U.S.C. § 379r(c)(2); *see also Carter v. Novartis Consumer Health, Inc.*, 582 F. Supp. 2d 1271, 1283 (C.D. Cal. 2008) (N.J. fraud and deception claims preempted for "impos[ing] a 'requirement' that is at variance with FDA regulations" governing OTC cold medications); *Slowinski v. BlueTriton Brands, Inc.*, 2024 U.S. Dist. LEXIS 141909, at *25-26 (N.D. Ill. Aug. 9, 2024) (state laws cannot impose additional obligations not required by federal law).

In response, Plaintiff summarily asserts that a monograph does not preempt state law advertising claims. Dkt. 20 ("Opp.") at 18 (citing *Goldemberg v. J& J Consumer Cos., Inc.,* 8 F. Supp. 3d 467, 475-76 (S.D.N.Y. 2014)). Yet, there was no applicable monograph in *Goldemberg*. *Goldemberg*, 8 F. Supp. 3d at 475 (no FDA regulation or guidance governing the usage of the word 'natural' on cosmetics labels…[nor any] federal requirement limiting brand name usage for cosmetics beyond the general prohibition of misbranding.").

Unlike *Goldemberg*, the cases relied on by Defendants in the Motion directly support a finding of preemption where, as here, there is an applicable Monograph. *See Truss v. Bayer Healthcare Pharms. Inc.*, 2022 WL 16951538, at *4-5 (S.D.N.Y. Nov. 15, 2022) (consumer protection claims preempted because benzophenone disclosures not mandated by monograph); *Crozier v. Johnson & Johnson Consumer Cos.*, 901 F. Supp. 2d 494, 504 (D.N.J. 2012) (monograph preempted false and misleading claim regarding OTC antiseptic and pain relieving spray). There is no basis for this Court to ignore the Monograph in favor of Plaintiff's own different and additional labeling requirements.

### 2. The FDA's Guidance Regarding Residual Solvents Is Non-Binding and Not Applicable

To avoid the plain controlling effect of the Monograph, Plaintiff claims that "the Products are not manufactured properly." Opp. at 18. Plaintiff's focus on 'manufacturing' is nothing more than an attempt to shroud his claims under the

auspices of the FDA's non-binding guidance regarding residual solvents. *See* Opp. at 17-18; Compl., ¶ 13; *see also* Dkt. 10-6 (Food and Drug Administration, *Guidance for Industry Q3C Impurities: Residual Solvents*, the "FDA Guidance"). Not only is it expressly non-binding,[2] the FDA Guidance does not govern the Therapeutic Shampoos.

The FDA Guidance concerns "residual solvents…that are ***used or produced*** during manufacturing process," and precludes such use "in the manufacture of drug substances" (unless "their ***use*** is unavoidable" in which case "levels should be restricted…"). Dkt. 10-6 at 1, 6 (emphasis added). Because Benzene is not used or produced in the manufacture of the Therapeutic Shampoos, the FDA Guidance is not controlling. The Therapeutic Shampoos are manufactured with and use coal tar in order to effectively treat specific scalp conditions. Benzene is not purposefully used during the manufacturing process any more than the other thousands of naturally occurring chemical compounds found within coal tar (with which Plaintiff does not take issue). *See* Compl., ¶ 16. By its own terms, and particularly in contrast to the direct applicability of the OTC coal tar Monograph, the FDA Guidance is intended for a wholly separate subset of products than the shampoos at issue here.

[2] The FDA Guidance notes that it "does not create or confer any rights for or on any person and does not operate to bind FDA or the public. An alternative approach may be used if such approach satisfies the requirements of the applicable statutes and regulations." Dkt. 10-6 at 5.

Plaintiff's carefully crafted allegations confirm this point, detailing instances where benzene is purposefully used in the manufacture of other products. *See e.g.,* Compl., ¶ 3 ("Benzene is typically ***used*** in the manufacture of gasoline..."); *id.* at ¶ 13 ("Benzene is ***used primarily … as a starting material and intermediate***…in gasoline.") (emphasis added). Nowhere does Plaintiff allege that benzene is used – primarily or otherwise – in the manufacture of the Therapeutic Shampoos. In fact, the Complaint makes no mention of how the coal tar shampoos are actually manufactured.[3] The sole tether between Plaintiff's claims and the FDA Guidance is the mere presence of benzene. A presence that is entirely justified given the composition of coal tar; and in a concentration that is expressly permitted by the FDA Guidance. *See* Compl., ¶ 6. There is therefore no basis for the FDA Guidance to supplant the Monograph as the controlling authority for the Therapeutic Shampoos, which preempts Plaintiff's claims.

**B. Plaintiff Lacks Standing**

Plaintiff's entire theory of injury, that he bought a product he would not otherwise have, is precisely the type of buyer's remorse theory that has been

[3] Plaintiff asserts that "appropriate manufacturing processes [would] reduce or eliminate benzene entirely in [the P]roducts." Opp. at 5; *see also* Compl. at ¶ 18. Yet, by definition, residual solvents "are not completely removed by practical manufacturing techniques." Dkt. 10-6 at 1. Accepting this allegation as true (which it is not) would nullify the FDA Guidance, whose entire purpose is to set non-zero limits for the presence of solvents in finished products.

repeatedly rejected in this Circuit. *See* Opp. at 10; *Gibriano v. Eisai, Inc.*, 2024 WL 1831546, at *6-7 (D.N.J. Mar. 30, 2024). Plaintiff does not allege that *his* purchase contained benzene; for example, by linking the shampoos allegedly tested with those he purchased. Nor does he establish that any of Therapeutic Shampoos had benzene levels sufficient to cause harm; since the alleged testing indicated levels well below the FDA's 2ppm guidance (Compl. ¶ 22) and the shampoos are rinsed off after only a few minutes. There is no basis to infer that Plaintiff received anything other than what he paid for – a coal tar shampoo. Accordingly, Plaintiff fails to state a cognizable injury. *In re Johnson & Johnson Talcum Powder Prods. Litig.*, 903 F.3d 278, 293 (3d Cir. 2018) (plaintiff's "wish to be reimbursed for a functional product … already consumed without incident does not itself constitute an economic injury within the meaning of Article III.").

Plaintiff's reference to alleged physical harm is similarly unavailing. Setting aside the fact that he seeks to recover only for economic harm (Opp. at 10), the allegations are unconvincing. First, the generalized allegation, confined to a ***single sentence***, that alleged "testing" that ostensibly revealed benzene does not establish that it was present in every shampoo bottle, let alone the one Plaintiff purchased. *See* Compl., ¶ 22 (failing to identify who conducted the testing, when the testing was conducted, or which products were tested); *id.* at ¶ 6 (alleging only that Plaintiff "purchased at least one or more of the [Therapeutic Shampoos]"). Nor does Plaintiff

connect the dots between unsafe benzene levels and the Therapeutic Shampoos he actually purchased. Plaintiff's authorities purporting to relieve him of this requirement are unavailing. *See Levy v. Hu Prods. LLC*, 2024 WL 897495, at *3 (S.D.N.Y. Mar 1, 2024) (plaintiff alleged specific details of third-party "testing '2-3 samples with at least two distinct lot codes of each model'" and that plaintiff purchased products on almost a weekly basis); *Bell v. Dave*, 2022 WL 2667017, at *4 (D.N.J. Jul. 11, 2022) (standing based on allegation that "*every* bottle of [kombucha] contains greater than 0.5% ABV" including bottles plaintiffs purchased) (internal quotations omitted) (emphasis in original). The hypothetical possibility that the Therapeutic Shampoos he purchased may have contained benzene is insufficient to permit a "reasonable inference" of injury. *Levy,* 2024 WL 897495, at *4.

Second, Plaintiff infers that the mere presence of benzene is sufficient to cause a litany of health issues. *See* Compl. ¶¶ 13-14. Again, other than a single reference to testing, Plaintiff wholly fails to explain at what level(s) benzene becomes "dangerous", let alone account for nuances in the method of its exposure. Even the FDA Guidance upon which Plaintiff relies so heavily denotes this crucial distinction; confirming that benzene's presence in pharmaceutical products is "acceptable," and may be "critical" for a variety of reasons. *See* 10-6 at 1*;*Compl. ¶ 6 nn. 6, 7. *Acceptable levels* of "permitted daily exposures," depend upon variations in use,

timing, and exposure conditions. *See id.* (noting that levels may be safe for "topical application" but not other uses). This nuance is particularly salient since the Therapeutic Shampoos are only used externally and rinsed off after only a few minutes. Nor does Plaintiff explain why the Original Formula shampoo could have caused injury when it contained less benzene than the FDA's 2ppm limit. *See* Compl., ¶ 22; *Koronthaly v. L'Oreal USA, Inc.*, 374 F. App'x 257, 259 (3d Cir. 2010) (rejecting plaintiff's "argument that she was misled into purchasing unsafe lipstick products [as] belied by the FDA's report finding that the lead levels in the Defendants' lipsticks were not dangerous and therefore did not require warnings"). Plaintiff is willfully blind to this distinction, opting instead for a zero-tolerance approach to the mere presence of benzene.

Because the Court cannot plausibly infer that Plaintiff purchased and used Therapeutic Shampoos containing unsafe levels of benzene, it is logically impossible for him to have been injured as a result. Thus, Plaintiff lacks Article III standing.

### C. Plaintiff's Fraud Claims Fail to Plead Any Actionable Misrepresentation or Omission

Both Plaintiff's affirmative misrepresentation and omission-based fraud claims are premised upon the absence of a specific benzene warning. *See* Opp. at 23 (citing Compl. ¶¶ 76-77, 92, 108-109, 111). Yet Plaintiff fails to explain how the alleged presence of trace amounts of benzene renders the Therapeutic Shampoos unsafe or ineffective. Instead, the Complaint ignores the fact that the FDA (in both

the governing Monograph and Plaintiff's cited FDA Guidance) expressly differentiates acceptable and dangerous levels of benzene, and that Plaintiff's own testing of the Original Formula confirms its 'safety and efficacy' as within the FDA's 2ppm recommended limit. *See* Section II(a), *supra*. Plaintiff does not, and cannot, deny that any health risks are dependent upon variations in benzene concentration and a product's actual use – nuances to which the Complaint and Opposition are entirely silent. *See* Dkt. 10-6 at 1. Plaintiff's inferential leap from naturally-occurring levels of benzene deemed acceptable by the FDA to a fraudulent "safety and efficacy profile" is without merit. Opp. at 24.

Moreover, Plaintiff's claims are belied by the actual labels on the Therapeutic Shampoos which prominently disclose both the presence of coal tar and, in the case of the Neutrogena T/Gel® Therapeutic Shampoo –Extra Strength shampoo, a Prop 65 carcinogenic warning. *See Lightning Lube, Inc. v. Witco Corp*., 4 F.3d 1153, 1185 (3d Cir. 1993) (no claim is actionable unless it is contrary to a representation actually made by the defendant, or an omitted fact that the defendant was obliged to disclose). Plaintiff purchased a product containing coal tar – a substance which he knew contained benzene. Compl., ¶ 16. Plaintiff does not explain how the specific mention of benzene, regardless of its concentration or the *actual* risk of harm posed to consumers, would provide consumers with additional material information beyond disclosing that the product contains coal tar. *See* Compl., ¶ 16 (coal tar contains

"[o]ver 400 compounds" and "as many as 10,000 may actually be present."); *see also Slowinski*, 2024 U.S. Dist. LEXIS 141909, at *35-36 (reasonable consumers would not think"100% Natural Spring Water" means entirely synthetic-free, where the FDA allows bottle water to contain small quantities of lead, mercury, arsenic, and cyanide).

Finally, the Complaint fails to allege that "the product that he personally purchased, and used, contained" unsafe levels of benzene. *Hoffman v. Nutraceutical Corp.*, 2013 WL 2650611, at *3 (D.N.J. June 10, 2013). Indeed, the only kind Plaintiff purchased (the Original Formula) had *less* than the 2ppm limit deemed acceptable by the FDA. Compl., ¶ 22. This deficiency, which the Opposition does not rebut, is an independent basis for dismissal as it precludes any "resulting damages, a requisite showing to properly plead common law fraud." *Hoffman,* 2013 WL 2650611, at *3 (dismissing fraud claim).

Because the Complaint is devoid of any allegations regarding benzene's presence in the specific shampoo(s) Plaintiff purchased, the concentration of benzene, whether it exceeded safe levels, or what "safe" levels even are for a shampoo product that is rinsed off shortly after topical application, the Court need not – and should not – accept the unsupported conclusions that the mere presence of "undisclosed benzene" was a material omission or contradicts the "safe and effective" moniker. Accordingly, Plaintiffs fraud claim must be dismissed.

### D. Plaintiff Fails to Plead Cognizable Breach of Warranty Claims

Plaintiff's breach of warranty claims fail for similar reasons as his other claims. Namely, he has failed to allege that the level of benzene allegedly present in the Therapeutic Shampoos was sufficient to cause injury. "[M]erely assert[ing] that some of Defendant's product contained 1.7 micrograms of lead… fails to establish what damages resulted from the product containing said lead." *See Hoffman,* 2013 WL 2650611, at *4 (dismissing express and implied warranty claims). Nor has Plaintiff plausibly shown that Therapeutic Shampoos were manufactured or tested improperly. Having failed to provide a basis for his claims that trace amounts of naturally-occurring benzene render the Therapeutic Shampoos unsafe, these claims must be dismissed.

Plaintiff's own authorities underscore the inadequacies of his claims. In *In re Metformin Mktg. & Sales Pracs. Litig.*, a generic drug's reference to the brand name equivalent created "an express warranty that what plaintiffs were purchasing was the chemical equivalent of the [brand name] pharmaceutical. 2022 WL 970281, at *11 (D.N.J. Mar. 30, 2022) (citing *In re Valsartan, Losartan & Irbesartan Prods. Liab. Litig.*, 2021 WL 222776, at *62 (D.N.J. Jan. 22, 2021)). Here, the Therapeutic Shampoos disclosed that they contained coal tar, which is precisely what Plaintiff purchased. The absence of plausible allegations that the Therapeutic Shampoos lacked functionality, caused any harm, or presented risk from topical application of

trace benzene levels fails to establish a breach of warranty – express[4] or implied – and Plaintiff's claims should be dismissed.

### E. Plaintiff's Negligence Claim Is Barred by the Economic Loss Doctrine

Despite claiming "personal harm injury" (Compl., ¶ 6) Plaintiff only seeks purely economic redress. *See* Opp. at 27. Plaintiff's negligence claim is thus squarely precluded by the economic loss doctrine. *See Kuzian v. Electrolux Home Prods*., 937 F. Supp. 2d 599, 608 (D.N.J. 2013) (doctrine bars "purely economic losses caused to the consumer because of a defective product.").

Plaintiff's assertion of a "special relationship" exception to this doctrine is misplaced. In fact, courts considering similar situations have refused any such basis. *See Schechter v. Hyundai Motor Am.*, 2019 WL 3416902, at *9 (D.N.J. Jul. 29, 2019) (no "special relationship between an individual consumer and a vehicle manufacturer creating a duty to disclose"); *see also Tyman v. Pfizer, Inc*., 2017 WL 6988936, at *16-17 (S.D.N.Y. Dec. 27, 2017) (dismissing claim under New York law since relationship "between an ordinary consumer' and a manufacturer of

---

[4] Plaintiff's breach of express warranty claim fails for the further reason that the Complaint fails to allege that Plaintiff "read, heard, saw or knew of" the 'safe and effective' warranty "when choosing to use the product." *Greisberg v. Boston Sci. Corp*., 2020 WL 4435409, at *5 (D.N.J. Aug. 3, 2020); *Metcalfe v. Biomet, Inc.*, 2019 WL 192902, at *3 (D.N.J. Jan. 15, 2019) ("[I]f a plaintiff does not plead that he saw the alleged warranty, then a court cannot reasonably infer that the warranty formed a basis of the bargain."). Plaintiff admits that he "does not allege to have even seen these statements." Dkt. 10-1 at 28; *see generally*, Opp. at 20-21.

personal care products…cannot satisfy the 'special relationship' requirement…") Plaintiff's reference to out-of-circuit authority portraying the doctrine as fact-intensive, precluding dismissal, is misleading since the fact-intensive determination was whether the doctrine "bars these claims…in forty-one states'" differing negligence laws. *See* Opp. at 25 (citing *In re Valsartan, Losartan, & Irbesartan Prods. Liab. Litig.*, 2021 WL 364663, at *22 (D.N.J. Feb. 3, 2021). Here, Plaintiff's claim is expressly limited to the law of a single state – New Jersey. *See* Compl. ¶ 88. There is no "fact-intensive" determination necessary to resolve this claim under New Jersey law, and Plaintiff's negligence claim is barred by the economic loss doctrine.

### F. Plaintiff's Unjust Enrichment Claim Is Duplicative and Should be Dismissed

"[A] claim for unjust enrichment cannot survive when there is an adequate remedy at law." *Ortiz v. Goya Foods, Inc.*, 2020 WL 1650577, at *5 (D.N.J. Apr. 3, 2020). Because Plaintiff's foundational claims fail, his unjust enrichment claim must be dismissed as well. *See Harris v. Pfizer, Inc.*, 586 F. Supp. 3d 231, 245 (S.D.N.Y. 2022) (dismissing unjust enrichment claim under New Jersey law where plaintiff failed to "explain why the unjust enrichment claim is distinct from the other claims).

## III. CONCLUSION

For the foregoing reasons, Defendants respectfully request that Plaintiff's claims be dismissed with prejudice, and without leave to amend.

Dated: August 12, 2024

Respectfully submitted,

*s/ Stephen Matthews*
Stephen Matthews
**DLA PIPER LLP (US)**
51 John F. Kennedy Parkway, Suite 120
Short Hills, New Jersey 07078
Tel.: (973) 520-2541
stephen.matthews@us.dlapiper.com

Angela C. Agrusa *(pro hac vice)*
Shannon E. Dudic *(pro hac vice)*
**DLA PIPER LLP (US)**
2000 Avenue of the Stars
Suite 400 North Tower
Los Angeles, California 90067-4735
Tel: (310) 595-3000
angela.agrusa@us.dlapiper.com
shannon.dudic@us.dlapiper.com

*Attorneys for Defendants*
*Johnson and Johnson Consumer Inc. and*
*Kenvue Inc.*

## CERTIFICATE OF SERVICE

I hereby certify that on August 12, 2024, a true and correct copy of the foregoing was electronically filed using the Court's CM/ECF System, which will send notification of such filing to all counsel of record.

s/ *Stephen C. Matthews*
Stephen C. Matthews