**NOT FOR PUBLICATION**

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| DAVID GRODNICK, *individual and on behalf of others similarly situated*,<br><br>Plaintiff,<br><br>v.<br><br>JOHNSON & JOHNSON, *et al.*,<br><br>Defendants. | Civil Action No. 24-2616 (MAS) (JBD)<br><br>**MEMORANDUM OPINION** |

**SHIPP, District Judge**

      This matter comes before the Court upon Defendants Johnson & Johnson Consumer Inc.'s and Kenvue Inc.'s (collectively "Defendants") motion to dismiss Plaintiff David Grodnick's ("Plaintiff") Class Action Complaint ("Complaint") (ECF No. 1), brought by Plaintiff individually and on behalf of others similarly situated (ECF No. 10). Plaintiff opposed (ECF No. 20), and Defendants replied (ECF No. 23). The Court has carefully considered the parties' submissions and reaches its decision without oral argument under Local Civil Rule 78.1(b). For the reasons set forth below, Defendants' motion is granted.

**I.  BACKGROUND**[1]

      Plaintiff is a citizen of New Jersey who, at least once in August 2021, purchased a Neutrogena T/Gel product (the "Coal Tar Shampoo Products") that was designed, manufactured,

---

[1] For the purpose of considering the instant Motion, the Court accepts all factual allegations in the Complaint as true. *See Phillips v. County of Allegheny*, 515 F.3d 224, 233 (3d Cir. 2008).

marketed, distributed, packaged, and/or sold by Defendants.[2] (Compl. ¶¶ 1, 6, ECF No. 1.) Specifically, Plaintiff purchased the Original Formula. (*Id.* ¶ 6.)

The Coal Tar Shampoo Products contain dangerous levels of benzene, a hazardous genotoxic substance. (*Id.* ¶ 2.) "Benzene is used primarily as a solvent in the chemical and pharmaceutical industries." (*Id.* ¶ 13.) Notably, Benzene is a known human carcinogen. (*Id.*) As such, the FDA regulates the solvent, classifying it as a "Class 1" solvent that should be "avoided." (*Id.*) This classification is important in the context of the Coal Tar Shampoo Products' manufacturing because benzene "is a substance found in, and that may be removed through refinement from, coal tar." (*Id.* ¶ 17.)

Defendants, in manufacturing the Coal Tar Shampoo Products, did not reduce or eliminate benzene, properly test and monitor the Coal Tar Shampoo Products, or disclose that the Coal Tar Shampoo Products contained any amount of benzene. (*Id.* ¶¶ 20-21.) The Coal Tar Shampoo Products did, however, contain measurable amounts of benzene, as evidenced by certain testing.[3] (*Id.* ¶ 22.)

On the above allegations, Plaintiff brings seven causes of action: (1) Breach of Express Warranty; (2) Breach of Implied Warranty; (3) Fraud (Affirmative Misrepresentation, Omission, and Concealment); (4) Negligent Misrepresentation and Omission; (5) violation of Consumer Protection Laws; (6) Negligence; and (7) Unjust Enrichment. (*See generally id.*) At the outset,

---

[2] These products include "Neutrogena T/Gel Therapeutic Shampoo–Original Formula" (the "Original Formula") and Neutrogena T/Gel Therapeutic Shampoo–Extra Strength (the "Extra-Strength Formula"). (Compl. ¶ 1.)

[3] Plaintiff avers that the Original Formula tested contained between 0.82 ppm and 1.49 ppm, and that the Extra-Strength Formula contained 4.36 ppm. (Compl. ¶ 22.)

2

however, Defendants contend that Plaintiff lacks Article III standing to bring any of these claims. (Defs.' Moving Br. 4, ECF No. 10.) For the reasons outlined below, the Court agrees.

## II.    **LEGAL STANDARD**

Article III of the Constitution limits the federal judiciary's authority to exercise its "judicial Power" to "Cases" and "Controversies" over which the federal judiciary is empowered to decide. *Plains All Am. Pipeline L.P. v. Cook*, 866 F.3d 534, 538 (3d Cir. 2017) (quoting U.S. Const. art. III, § 2). "This case-or-controversy limitation, in turn, is crucial in 'ensuring that the Federal Judiciary respects the proper—and properly limited—role of the courts in a democratic society.'" *Id.* at 539 (quoting *DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 341 (2006)). The existence of a case or controversy, therefore, is a necessary "prerequisite to all federal actions." *Phila. Fed'n of Teachers. v. Ridge*, 150 F.3d 319, 322 (3d Cir. 1998) (quoting *Presbytery of N.J. of Orthodox Presbyterian Church v. Florio*, 40 F.3d 1454, 1462 (3d Cir. 1994)).

Federal courts ensure that they are properly enforcing the case-or-controversy limitation through "several justiciability doctrines that cluster about Article III . . . including 'standing, ripeness, mootness, the political-question doctrine, and the prohibition on advisory opinions.'" *Plains*, 866 F.3d at 539 (quoting *Toll Bros., Inc. v. Township of Readington*, 555 F.3d 131, 137 (3d Cir. 2009)). Where a justiciability doctrine like standing is implicated, "[f]ederal courts lack [subject-matter] jurisdiction to hear" parties' claims, and the claims must be dismissed. *Ruhrgas AG v. Marathon Oil Co.*, 526 U.S. 574, 583 (1999) ("Article III generally requires a federal court to satisfy itself of its jurisdiction over the subject matter before it considers the merits of a case. 'For a court to pronounce upon [the merits] when it has no jurisdiction to do so . . . is . . . for a court to act ultra vires.'" (quoting *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 101-02 (1998)); *see also Battou v. Sec'y U.S. Dep't of State*, 811 F. App'x 729, 732 (3d

3

Cir. 2020) (citing *Armstrong World Indus., Inc. ex rel Wolfson v. Adams*, 961 F.2d 405, 410-11 (3d Cir. 1992)).

### III. DISCUSSION

Defendants contend that Plaintiff fails to adequately allege a "particularized" injury. (*See* Defs.' Moving Br. 4 (contending that Plaintiff does not adequately allege that he himself "actually purchased shampoos containing benzene," the presence of which serves as the basis for Plaintiff's alleged injury). "To establish Article III standing, a plaintiff must show[:] (1) an 'injury in fact,'[;] (2) a sufficient 'causal connection between the injury and the conduct complained of,' [;] and (3) a 'likl[hood]' that the injury 'will be dressed by a favorable decision.'" *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 157-58 (2014) (alteration in original) (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992)). To adequately allege an "injury-in-fact," a plaintiff must identify the "invasion of a legally protected interest which is[:] (a) concrete and particularized; and (b) actual or imminent, not conjectural or hypothetical." *West v. Health Net of the Ne.*, 217 F.R.D. 163, 173 (D.N.J. 2003) (quoting *Lujan*, 504 U.S. at 560). A "particularized" injury is an injury that "affects [a plaintiff] in a 'personal and individual way.'" *Yaw v. Del. River Basin Comm'n*, 49 F.4th 302, 314 (3d Cir. 2022) (quoting *Spokeo, Inc. v. Robins*, 578 U.S. 330, 339 (3d Cir. 2016)). "In a class action, the class's standing turns on the named plaintiff['s] standing." *Lewis v. Gov't Emps. Ins. Co.*, 98 F.4th 452, 459 (3d Cir. 2024).[4] As such, if Plaintiff is unable to allege he

---

[4] The Court notes that "standing is not dispended in gross," and it is instead analyzed as to each specific claim. *Lewis*, 98 F.4th at 459 (quoting *Town of Chester v. Laroe Ests., Inc.*, 581 U.S. 433, 439 (2017)). Where, as here, all claims allege the same injury, it is proper for a Court to analyze each claim in one collective standing analysis. *See In re Johnson & Johnson Talcum Prods. Mktg., Sales Pracs. & Liab. Litig.*, 903 F.3d 278, 283 (3d Cir. 2018) (acknowledging the existence of several claims but focusing solely on the alleged economic injury in assessing standing because each claim was predicated on the same general economic injury).

suffered an injury in a "personal and individual way," the Complaint must be dismissed because this Court lacks subject-matter jurisdiction to hear Plaintiff's claims.

Here, all of Plaintiff's claims are predicated on the theory that: (1) the Coal Tar Shampoo Products contained the harmful substance benzene (Compl. ¶ 2); (2) Defendants did not disclose this fact (*id.* ¶ 3); and (3) therefore Plaintiff was economically injured where he did not receive the benefit-of-the-bargain when purchasing the Coal Tar Shampoo Products because he did not bargain for the undisclosed presence of benzene, i.e., he purchased an unsafe product worth less than the safe product he believed he purchased, (*see id.* ¶¶ 4, 109 (alleging that the "Coal Tar Shampoo Products were of lesser quality and worthless (or certainly worth less) through unacceptable and undisclosed levels of benzene")). Notably, the Third Circuit recently found that this general theory of economic injury can be sufficient to establish Article III standing where a plaintiff avers he unknowingly purchased products "contaminated" with benzene. *Huertas v. Bayer US LLC*, 120 F.4th 1169, 1174 (3d Cir. 2024) (finding that a plaintiff can cognizably state an injury based on a theory that "benzene-contaminated products are worth less than uncontaminated products" because contaminated products "are unfit for their intended use"). The Third Circuit's finding, however, was predicated on the plaintiff successfully alleging a *particularized* economic injury. *See id.* ("Having determined that [p]laintiffs have plausibly alleged economic injury, [a court] must still determine whether [a plaintiff] sufficiently alleged that [the products *he* purchased] were defectively manufactured and contained benzene." (quoting *In re Johnson & Johnson* 903 F.3d at 289)).The Court finds that Plaintiff did not adequately allege a particularized economic injury relating to Defendants' sale of the Coal Tar Shampoo Products.

Importantly, allegations that a product is "unsafe *as to others* are not relevant to determining whether [named plaintiffs] ha[ve] standing [themselves]." *Huertas*, 120 F.4th at 1178

5

(alterations in original) (quoting *In re Johnson & Johnson*, 903 F.3d at 289). In *Huertas*, the Third Circuit found that for a plaintiff to successfully bring a particularized claim predicated on a benefit-of-the-bargain theory in the context of undisclosed benzene contamination, a plaintiff needs to provide "sufficient details to plausibly allege that [*his* purchased] products were contaminated." *Id.* To do so, the *Huertas* Court found, a plaintiff need not allege that *all* of a defendant's products were contaminated to plausibly allege that a plaintiff himself bought a contaminated product. *Id.* at 1179. That said, however, a plaintiff still must adequately allege that contamination was widespread enough "to plausibly affect any given [product], including the ones [the plaintiffs] purchased." *Id.*

In *Huertas*, a plaintiff potentially met the "particularized injury" bar, pending a district court's determinations as to plausibility, where judicial notice was taken of a complaint that the *Huertas* defendant filed as a plaintiff in a different litigation. *Id.* at 1179-80. The complaint that the *Huertas* defendant filed in a separate litigation averred that the *Huertas* defendant had to perform a recall of products "contaminated with benzene" which caused millions of dollars in specifically alleged damages. *Id.* The Third Circuit in *Huertas* found this specific admission by the *Huertas* defendant in the separate litigation significant, ultimately remanding the *Huertas* action to the district court for consideration of whether the recall admission, coupled with testing data the plaintiff identified, rendered it plausible that the product the *Huertas* plaintiff had purchased was, itself, contaminated due to widespread contamination in defendant's products. *See id.* at 1179-81.

Here, Plaintiff comes nowhere near the plausibility bar recently identified in *Huertas*. Specifically, Plaintiff's allegations are impermissibly vague as to his individual purchase and the testing that allegedly exhibits widespread contamination in the Coal Tar Shampoo Products. (*See*

6

*generally* Compl.) To be clear, other than the short proclamation that "in August 2021," Plaintiff purchased the Original Formula, Plaintiff provides no further allegations about his individual purchase. (*Id.* ¶ 6.) For example, at the most basic level, Plaintiff fails to allege that the specific Original Formula he purchased contained benzene. (*Id.* ¶ 6 (alleging only that Plaintiff purchased the Original Formula, not that the Original Formula that *Plaintiff* purchased contained benzene).) This failure alone may be sufficient for the Court to find that Plaintiff failed to adequately allege a particularized injury.

Of greater consequence, however, is Plaintiff's failure to identify any details as to the testing that allegedly revealed benzene in the Coal Tar Shampoo Products. (*See id.* ¶ 22.) Instead, Plaintiff only conclusory alleges that "[t]esting . . . reveals that [the] Coal Tar Shampoo Products contain benzene." (*Id.*) Notably, other than this sole allegation, no further details as to the testing are given. (*See generally id.*) This is significant for two reasons. First, without any allegations as to *when* the testing occurred, it is impossible to assess whether it is plausible that the product Plaintiff purchased in "August 2021" was contaminated with benzene. If, for example, the alleged testing that identified benzene in the Coal Tar Shampoo Products was conducted in 2015 or 2024, it would be difficult for the Court to infer without corroborating allegations that the product Plaintiff purchased in August 2021 necessarily contained benzene.

Second, even if the Court assumes that the alleged testing occurred in 2021 or sometime in close proximity to Plaintiff's purchase, there are no allegations in the Complaint that plausibly allege widespread contamination such that it would be plausible to infer Plaintiff, in purchasing the Original Formula in 2021, necessarily purchased a contaminated product. Unlike in *Huertas*, there is no allegation of a pervasive recall of the Coal Tar Shampoo Products, nor does Plaintiff allege that Defendants admitted in some way that there is a widespread benzene contamination in

the Coal Tar Shampoo Products. (*See generally* Compl.) In fact, Plaintiff does not even allege how many products were tested in the study he cites such that the Court can infer there may be a widespread benzene contamination as deduced from the size of that testing. (*See id.* ¶ 22.)

In sum, Plaintiff offers a dearth of allegations related to: (1) Plaintiff's individual purchase; (2) the testing that allegedly evidences benzene contamination; and (3) any other facts that might suggest widespread contamination of the Coal Tar Shampoo Products such that this Court can infer it was plausible that Plaintiff purchased a contaminated product in 2021. As such, this Court has no choice but to presume Plaintiff did not suffer a particularized injury capable of conferring standing upon him in this action. *See Renne v. Geary*, 501 U.S. 312, 316 (1991) (finding that federal courts are to "presume" they "lack jurisdiction unless the contrary appears affirmatively from the record." (quoting *Bender v. Williamsport Area Sch. Dist.*, 475 U.S. 534, 546 (1986) (internal quotation marks omitted)). Accordingly, the Court will dismiss Plaintiff's Complaint.

### IV.   CONCLUSION

For the reasons set forth above, Plaintiff has failed to adequately allege that he suffered a particularized injury sufficient to confer Article III standing. Accordingly, Plaintiff's Complaint is dismissed in its entirety. An accompanying Order will follow.

MICHAEL A. SHIPP
UNITED STATES DISTRICT JUDGE